1
2
3
4
5
6

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

7

8  United States of America and the State of
   Arizona,

9          Plaintiffs,                                    CASE NO. CV 07-1030-PHX

10  v.                                                    **FINAL JUDGMENT**

11  Arizona Hospital and Healthcare
    Association and AzHHA Service
12  Corporation,

13          Defendants.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# FINAL JUDGMENT

WHEREAS, Plaintiffs, United States of America and the State of Arizona, filed their Complaint on May 22, 2007, alleging Defendants' violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and the State of Arizona has also alleged Defendants' violated Section 44-1402 of Arizona's Uniform State Antitrust Act, A.R.S. § 44-1402, and Plaintiffs and Defendants, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by Defendants, or any other entity, as to any issue of fact or law;

AND WHEREAS, the essence of this Final Judgment is the prohibition of certain agreements on bill rates and competitively sensitive contract terms, and actions coordinating and supporting those agreements, by the Arizona Hospital and Healthcare Association, its subsidiary the AzHHA Service Corporation, and their participating member hospitals;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. Jurisdiction

This Court has jurisdiction over the subject matter of and the parties to this action. Defendants stipulate that the Complaint states a claim upon which relief may be granted against Defendants under Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1, and A.R.S. § 44-1402.

## II. Definitions

As used in this Final Judgment,

A.  "AzHHA" means the Arizona Hospital and Healthcare Association, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

B.  "AzHHA Service Corporation" means the AzHHA Service Corporation, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, mangers, agents, and employees.

C.  "Competitively Sensitive Contract Terms" means those contractual terms, and any information related to those terms, that, as specified in Section IV(A) of this Final Judgment, cannot be included in the Program Contract and must be negotiated independently between each Participating Hospital and each Participating Agency.

D.  "Defendants" means AzHHA and the AzHHA Service Corporation, jointly or individually.

E.  "Non-Participating Agencies" means temporary staffing agencies that sell services to Participating Hospitals or other AzHHA members outside the Registry Program.

F.  "Participating Agencies" means temporary staffing agencies that sell services to Participating Hospitals through the Registry Program.

G.  "Participating Hospitals" means hospitals or hospitals systems that are members of AzHHA that use the Registry Program to purchase Temporary Nursing Personnel.

H.  Per Diem Registry" means the Registry Program used by Participating Hospitals for the purchase of Temporary Nursing Personnel on an ad hoc or as needed basis, including both the Northern and Southern regions of the Registry Program.

I.  "Program Contract" means any contract used by the Defendants to set the terms and conditions of the contractual relationship between Participating Hospitals and Participating Agencies for the Per Diem Registry and the Travel Registry.

J.  "Registry Program" means the program for the purchase of Temporary Nursing Personnel through the Per Diem Registry or the Travel Registry operated by the AzHHA Service Corporation, or any such program operated by AzHHA or the AzHHA Service Corporation in the future.

K.  "Temporary Nursing Personnel" means registered nurses, licensed practical nurses, certified nurse assistants, operating room technicians, behavioral health technicians, and sitters whom offer their services on a temporary basis.

L.  "Travel Registry" means the Registry Program used by Participating Hospitals for the purchase of Temporary Nursing Personnel for thirteen weeks or longer.

## III.  Applicability

This Final Judgment applies to AzHHA, the AzHHA Service Corporation, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

## IV.  Prohibited Conduct

A.  The Defendants shall not include in any Program Contract any provision setting, prescribing, or imposing, directly or indirectly:

1.  rates paid by Participating Hospitals to Participating Agencies, including the process or manner by which Participating Agencies submit, negotiate, or contract for rates with Participating Hospitals;

2.  a common rate structure, including shift differentials;

3.  payment terms between Participating Hospitals and Participating Agencies;

4

4.   any cancellation policy or penalty for cancellation by Participating Hospitals or Participating Agencies;

5.   the payment of bonuses by Participating Hospitals or Participating Agencies; or,

6.   any requirement or encouragement of Participating Hospitals to give priority to or deal with Participating Agencies, including any minimum usage requirements of Participating Hospitals or Participating Agencies.

B.   The Defendants shall not:

1.   impose on, encourage, facilitate, induce, or require, directly or indirectly, Participating Hospitals to (a) use any Registry Program or Participating Agencies exclusively, or grant right of first refusal to any Registry Program or Participating Agencies, (b) boycott, exclude, refuse to deal with, or discriminate against Non-Participating Agencies, or (c) meet any minimum requirements for use of Participating Agencies; except that the Defendants may promote features of the Registry Program to Participating Hospitals, Participating Agencies, and other persons, provided such promotion does not include rebates or other financial incentives for participation;

2.   require, encourage, or induce Participating Agencies to deal with Participating Hospitals through the Registry Program;

3.   encourage, facilitate, induce, participate in, or undertake any understanding or agreement among AzHHA members or Participating Hospitals (a) to adopt the Program Contract or participate in the Registry Program, or (b) regarding Competitively Sensitive Contract Terms;

4.   provide any rebates or other direct financial incentives to Participating Hospitals to encourage or increase their participation in

5

the Registry Program or use of Participating Agencies, except that, if the Defendants change the Registry Program so that fees are paid by Participating Hospitals rather than by Participating Agencies, then the fee structure may recognize Participating Hospitals' volume of usage of the Registry Program;

5.   receive, gather, or collect Competitively Sensitive Contract Terms, except for such Competitively Sensitive Contract Terms as are necessary to operate the Registry Program, provided access to the Competitively Sensitive Contract Terms obtained is restricted to those AzHHA employees performing ministerial tasks for the Registry Program;

6.   communicate, convey, announce, share, or disseminate to any AzHHA member, Participating Hospital, or Participating Agency, the Competitively Sensitive Contract Terms of any other AzHHA member, Participating Hospital or Participating Agency;

7.   select, or consider selection of, agencies for participation in the Registry Program, directly or indirectly, on the basis of Competitively Sensitive Contract Terms;

8.   select, or consider selection of, agencies for participation in the Registry Program based on the amount of hours provided to Participating Hospitals through the Registry Program before or after the entry of this Final Judgment, except that the Defendants may establish a required annual minimum volume of commerce, measured by the aggregate fees paid to the Defendants by a Participating Agency, which agencies must meet to continue their participation in the Registry Program, provided that those requirements are uniformly applied to all Participating Agencies and are based on the objective costs of operating the Registry Program; or,

6

9.      communicate, convey, announce, share, or disseminate information regarding Registry Program usage by Participating Hospitals or Participating Agencies, except that the Defendants may tabulate and disseminate the total annual usage of the Registry Program by all Participating Hospitals.

## V. Mandated Conduct

The Final Judgment is effective upon entry, except that the Defendants shall have ninety days (90) days from entry to amend the Program Contract to comply with Section IV(A)(1)-(6) of this Final Judgment.

## VI. Permitted Conduct

A.      Subject to Sections IV and V of this Final Judgment, the Program Contract may:

1.      establish definitions of nurse types, e.g., "specialty" and "non-specialty";

2.      establish payment terms between the Registry Program and Participating Agencies, including any participation fees;

3.      establish a credentialing program, including auditing and file retention requirements required of Participating Agencies;

4.      establish requirements for personnel hired from Participating Agencies, including background checks, drug panel screens, and prior experience;

5.      establish insurance and indemnification requirements to be met by Participating Agencies; and

6.      allow Participating Hospitals and Participating Agencies to independently and individually negotiate and reach agreement on Competitively Sensitive Contract Terms.

B.   The Defendants may:

    1.   solicit information and views from Participating Hospitals about the Registry Program or the Program Contract, so long as the Defendants do so consistently with Sections IV and V of this Final Judgment, and do not share any Participating Hospital's information or views about any Competitively Sensitive Contract Terms with any other Participating Hospital;

    2.   establish the terms of the Program Contract, and create mechanisms for its administration, consistently with Sections IV, V and VI(A) of this Final Judgment;

    3.   meet with Participating Hospitals to choose criteria for selecting Participating Agencies, provided those criteria conform with the requirements given in Section IV(A) of this Final Judgment and the meetings are conducted in accordance with the prohibitions found in Section IV(B) of this Final Judgment;

    4.   communicate with Participating Hospitals the results of audits or file reviews performed on Participating Agencies; and

    5.   communicate to Participating Hospitals or Participating Agencies any information or message from a Participating Hospital or Participating Agency, provided that the communication does not otherwise violate Section IV of this Final Judgment.

C.   Nothing in this Final Judgment shall prohibit AzHHA or its members, the AzHHA Service Corporation, Participating Agencies, or Participating Hospitals, from advocating or discussing, in accordance with the doctrine established in <u>Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.</u>, 365 U.S. 127 (1961), <u>United</u>

<u>Mine Workers v. Pennington</u>, 381 U.S. 657 (1965), and their progeny, any legislative, judicial, or regulatory actions, or other governmental policies or actions.

### VII.  Antitrust Compliance and Notification

A.   AzHHA shall establish an Antitrust Compliance Office, including appointment of an Antitrust Compliance Officer ("Antitrust Compliance Officer") within thirty (30) days of entry of this Final Judgment, and a successor within thirty (30) days of a predecessor's vacating the appointment.  Each Antitrust Compliance Officer appointed shall not have had previous involvement with the Registry Program prior to the entry of this Final Judgment.

B.   Each Antitrust Compliance Officer appointed pursuant to Section VII(A) shall be responsible for establishing and implementing an antitrust compliance program for the Defendants and ensuring the Defendants' compliance with this Final Judgment, including the following:

    1.   The Defendants shall furnish a copy of this Final Judgment (a) within thirty (30) days of entry of this Final Judgment to each of Defendants' directors and officers, and each employee of the Defendants who is involved in the Registry Program, and (b) within thirty (30) days of their appointment to each person who succeeds to any such position.

    2.   Within thirty (30) days of furnishing a copy of this Final Judgment to any person pursuant to Section VII(B)(1), the Defendants shall obtain from such person a signed certification that the person has read, understands, and agrees to comply with the provisions of this Final Judgment, to the best of his/her knowledge at the time the certification is made is not aware of

any violation of this Final Judgment by Defendants that has not
already been reported to the Antitrust Compliance Officer, and
understands that failure to comply with this Final Judgment
may result in conviction for criminal contempt of court.

3.   Upon learning of any potential violation of any provision of this
Final Judgment, the Antitrust Compliance Officer shall
forthwith take appropriate action to terminate or modify the
activity so as to comply with this Final Judgment.  Any such
action shall be reported in the annual compliance report
required by  Section VII(B)(4) of this Final Judgment.

4.   For each year during the term of this Final Judgment, on or
before the anniversary date of this Final Judgment, the Antitrust
Compliance Officer shall file with the Plaintiffs a report as to
the fact and manner of its compliance with the provisions of
this Final Judgment.

5.   The Defendants shall furnish a copy of this Final Judgment to
each current Participating Hospital and current Participating
Agency, and shall in the future furnish a copy of this Final
Judgment to new Participating Hospitals or Participating
Agencies within thirty (30) days of their agreement to the
Program Contract.  The Defendants shall require all
Participating Hospitals to furnish a copy of this Final Judgment
to managerial employees involved in hiring or contracting
Temporary Nursing Personnel within thirty (30) days of entry
of this Final Judgment or of succeeding to the position.  Within
forty-five (45) days of entry of this Final Judgment, the
Defendants shall require each Participating Hospital to certify
that it has received a copy of this Final Judgment and has

furnished a copy of this Final Judgment to managerial

employees then involved in temporary nurse hiring or

contracting.

### VIII.  Compliance Inspection

A.    For purposes of determining or securing compliance with this Final

Judgment, or of determining whether this Final Judgment should be

modified or vacated, and subject to any legally recognized privilege,

from time to time authorized representatives of the Plaintiffs,

including consultants and other persons retained by the United States

or the State of Arizona, shall, upon written request of an authorized

representative of the Assistant Attorney General in charge of the

Antitrust Division, or the Attorney General of the State of Arizona,

and on reasonable notice to the Defendants be permitted:

1.    Access during the Defendants' office hours to inspect and copy,

or at the option of the Plaintiffs, to require the Defendants to

provide copies of all documents, as defined by Rule 34 of the

Federal Rules of Civil Procedure, in the possession, custody, or

control of the Defendants, relating to any matters contained in

this Final Judgment; and

2.    To interview, either informally or on the record, the

Defendants' officers, employees, agents, or other

representatives, who may have their individual counsel present,

regarding such matters.  Any interview shall be subject to the

reasonable convenience of the interviewee and without restraint

or interference by the Defendants.

B.    Upon the written request of an authorized representative of the

Assistant Attorney General in charge of the Antitrust Division, or the

Attorney General of the State of Arizona, the Defendants shall submit

11

written reports and interrogatory responses, under oath if requested, relating to any of the matters contained in this Final Judgment, as may be requested.

C.  No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.  No information or documents obtained by the means provided in this section shall be divulged by the State of Arizona to any person other than an authorized representative of the executive branch of the State of Arizona, except in the course of legal proceedings to which the State of Arizona is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

E.  When information or documents are furnished by the Defendants to the Plaintiffs, if the Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(7) of the Federal Rules of Civil Procedure, and the Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure," then the Plaintiffs shall give Defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding other than a grand jury proceeding.

### IX.  Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

### X.  Term

This Final Judgment shall expire ten (10) years after the date of its entry.

### XI.  Public Interest Determination

The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' response to comments.  Based upon the record before this Court, which includes the Competitive Impact Statement and any comments and response to comments filed with this Court, entry of this Final Judgment is in the public interest.


**IT IS FURTHER ORDERED** that the motion for relief from standard track order (Doc. #11) is granted, the Stipulation for Final Judgment (Doc. #2) is granted and the Motion to Approve Consent Judgment (Doc. #14) is granted.

DATED this 12th day of September, 2007.

James A. Teilborg
United States District Judge

13